**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ. (#6711)
CORY M. FORD, ESQ. (#15042)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
aml@lagomarsinolaw.com
cory@lagomarsinolaw.com
*Attorneys for Plaintiff Jessica Clarke*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JESSICA CLARKE, an individual;<br><br>Plaintiff,<br><br>v.<br><br>LOOMIS ARMORED US, LLC, a Foreign Limited-Liability Company;<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff JESSICA CLARKE, by and through her attorneys of record, ANDRE M. LAGOMARSINO, ESQ. and CORY M. FORD, ESQ., of Lagomarsino Law Offices, hereby submits the following Complaint and Demand for Jury Trial, alleging and complaining as follows:

## **JURISDICTION AND VENUE**

1. This action is brought to remedy violations of Plaintiff's rights under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the corresponding Nevada Revised Statutes ("NRS") § 613.310 *et seq.* for discrimination.

2. Damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. § 2000e *et seq.* and NRS § 613.310 *et seq.*

3. Venue is proper in this District pursuant to 42 U.S.C. § 2000(f)(3) and NRS § 613.310 *et seq.* as all facts and circumstances surrounding Plaintiff's claims occurred in

Clark County, Nevada. Additionally, this Court has supplemental jurisdiction over the claims in this action arising under the laws of the State of Nevada pursuant to 28 U.S.C. § 1367 and the principles of pendent jurisdiction.

## PARTIES TO THIS ACTION

4. At all times relevant herein, Plaintiff JESSICA CLARKE ("Plaintiff") was, and is, a resident of Clark County, Nevada.

5. At all times relevant herein, Plaintiff was an employee of Defendant LOOMIS ARMORED US, LLC ("Defendant").

6. At all times relevant herein, Defendant was and is a privately owned corporation, licensed and operating in Las Vegas, Nevada.

## PROCEDURAL REQUIREMENTS

7. On or about February 19, 2021, Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission ("NERC") and the U.S. Equal Employment Opportunity Commission ("EEOC").

8. The EEOC issued Plaintiff's Notice of Right to Sue on May 24, 2021. Plaintiff exhausted all administrative remedies in connection with this action.

9. Plaintiff fully complied with all prerequisites for jurisdiction in this Court to bring claims under Title VII and related Nevada Revised Statutes §§ 613.310 *et. seq.*

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

10. Plaintiff incorporates and realleges Paragraphs 1 through 9 of this Complaint as though fully set forth herein.

11. Defendant is a privately owned, international corporation, that provides businesses with cash management services.

12. Plaintiff began working for Defendant on June 30, 2016, as a Loss Prevention

Manager, Corporate ("LPM").

13. Plaintiff was one of seventeen (17) LPMs in the United States, and she was the only female LPM at the time.

14. Plaintiff's supervisor was Randy Sheltra ("Sheltra"). Sheltra was Defendant's employee and oversaw all LPMs in the United States.

15. At all relevant times, Sheltra was acting within the course and scope of his employment.

16. As an LPM, Plaintiff was responsible for all risk and safety issues within her district. This included investigating any potential threats, crashes, and discrepancies; evaluating employees' driving performance; conducting audits of branch procedures; conducting financial audits; conducting truck audits; and conducting route audits.

17. Plaintiff was also required to obtain various professional certifications, frequently travel to her assigned branches, and be available 24/7 for alarm and emergency calls.

18. Plaintiff ranked within the top three (3) performing LPMs in the country for three (3) years and consistently received praise from her superiors and branch managers for her performance.

19. With one meritless exception, Plaintiff had no documented performance or behavioral issues during her tenure with Defendant.

20. Despite constantly proving herself as a qualified and reliable employee, Plaintiff was treated differently than her male counterparts.

21. Sheltra, Plaintiff's supervisor, made endless comments referencing Plaintiff's sex in relation to her job. For example, Sheltra commented that Plaintiff "did pretty good for a girl," that her position was usually a man's job, and that women generally "could not handle being an LPM."

22. Further, Sheltra made it obvious that he did not want Plaintiff on his team. Plaintiff was so concerned by this that she began looking for another job because she feared that Sheltra

would find a way to fire her.

23. Sheltra frequently behaved in this manner towards Plaintiff. However, the discrimination became worse once Sheltra discovered that Plaintiff is a lesbian.

24. Any time Plaintiff's wife was mentioned, Sheltra would walk away, turn away, or give Plaintiff rude stares.

25. In early February 2019, Plaintiff received an annual review for the first time since she began working for Defendant. In this review, Plaintiff self-identified areas in which she wanted more training and experience, such as interviewing/investigating people and compiling creative case solutions.

26. In the same annual review, Sheltra rated Plaintiff a '3' (on a scale of 1-5) in all performance categories. When Plaintiff asked why she received an average score despite being within the top three (3) performing LPMs in the country, Sheltra explained it was because she was a newer employee, and everyone has room to improve.

27. Sheltra did not identify any specific problems with Plaintiff's performance in her annual review. In fact, Sheltra focused on the areas that Plaintiff had previously stated she wished to improve.

28. On February 13, 2019, shortly after her annual performance review, Sheltra issued Plaintiff a Performance Improvement Plan ("PIP"). Many of the areas identified as needing improvement were those that Plaintiff had previously identified in her annual performance review.

29. Plaintiff had not previously received any indication that her performance needed improvement and, to Plaintiff's knowledge, no other LPMs received PIPs following their performance reviews.

30. PIPs were supposed to be measurable with clear goals, extra help and training, completion dates, root causes, clarity regarding consequences, and regular check-ins from the

issuing manager.

31. Plaintiff was not offered any additional training or help. Sheltra did not regularly check-in with her. No root causes were identified. Her goals were not clear and measurable. Although a 90-day time frame was provided, the deadline came and went without further communication from Sheltra. *See* **Exhibit 1, Clarke PIP.**

32. On or around March 29, 2019, Plaintiff and Sheltra had a follow-up telephone conference regarding the PIP.

33. Plaintiff had completed everything on the PIP and provided Sheltra with several documents that corroborated her efforts.

34. At this meeting, Sheltra explicitly informed Plaintiff that she fulfilled everything he wanted her to do, and the PIP would be wiped from her record.

35. Sheltra never met with Plaintiff again regarding the PIP and gave no indication that the PIP was open or incomplete.

36. Plaintiff requested a signed copy of the PIP to show it was completed. Sheltra never provided her with one.

37. Sheltra came up with an excuse or told Plaintiff that he would send the signed PIP over "later" every time she asked him.

38. Defendant further requires all LPMs to complete accreditation courses. Plaintiff finished an accreditation course on September 13, 2019, to be certified as a Director of Safety through the North America Transportation Management Institute.

39. Plaintiff informed Sheltra that he would need to complete some paperwork in order to finalize the course and obtain her certificate.

40. In the following months**,** Plaintiff made numerous phone and email requests for the required paperwork. Sheltra continually provided excuses as to why he had not completed it.

41. Sheltra never provided Plaintiff with the paperwork. She remains unable to obtain her official certification despite completing the required course.

42. At the same time that Sheltra refused to complete the paperwork that Plaintiff needed for her accreditation course, he did not take any action to ensure that male LPMs completed the required accreditation courses at all. *See* **Exhibit 2, Text Messages.**

43. On November 7, 2019, Plaintiff was assaulted by her wife. Plaintiff suffered intense physical and emotional injuries, her wife was arrested, charged for the crime, and Plaintiff obtained a protection order against her spouse.

44. Plaintiff informed Sheltra of the assault, and Sheltra was initially shocked and concerned. When he asked Plaintiff who assaulted her, she informed him that it was her wife.

45. Sheltra's tone immediately changed. He became distant, rude, and seemed disgusted. From that point on, Sheltra was only concerned as to when Plaintiff would be back to work.

46. Although Plaintiff's doctor suggested she take a few days off work, Plaintiff feared that Sheltra would use this against her. Plaintiff worked from home <u>the day after the assault</u> and returned to the office the following day out of fear of losing her job.

47. Further, Plaintiff could not take the pain medications or muscle relaxers that she was prescribed due to the traveling requirements. This substantially prolonged her pain and suffering.

48. Later in November 2019, the same month as her assault, Plaintiff was assigned to investigate a new case (the "investigation").

49. Plaintiff spent a substantial amount of time working the investigation with the branch manager, the customer, and the assigned detective. However, the customer was uncooperative, and the investigation was extended.

50. Investigations typically last between one (1) to eight (8) months depending on what allegations it entailed. By February 2020, Plaintiff's assigned investigation had been open just over

two (2) months.

50. Plaintiff completed her portion of the investigation by that time, but the customer's lack of cooperation halted further progress. Plaintiff reached out to Sheltra and other higher-ups for help but did not receive assistance.

52. On February 10, 2020, Sheltra terminated Plaintiff for not working the investigation quickly enough.

53. Sheltra also referenced the February 2019 PIP as a reason for her termination, stating that Plaintiff had not completed it despite having said differently at the follow-up meeting.

54. Plaintiff was never informed that the PIP was still outstanding. In fact, Sheltra never discussed the PIP with Plaintiff after their March 29, 2019 follow-up meeting.

55. Plaintiff received no complaints from her branch managers or higher-ups that suggested her performance was, or remained, an issue.

56. Plaintiff was consistently treated differently than her male counterparts. Despite her superior performance, Plaintiff was subjected to harsher reviews, reprimands, and punishments.

57. One male LPM under Sheltra oversaw branches in Hawaii and Alaska that were having frequent issues. LPMs were required to visit each of their branches at least once a quarter, but this LPM had failed to visit the problem branches for nine (9) months. The LPM was never even reprimanded.

58. Another male LPM under Sheltra had a branch robbery, tens of thousands of dollars lost, and consistently ranked at the bottom for several years in a row. The LPM is still employed with Defendant.

59. Another male LPM under Sheltra failed branch audits, several thefts, substantial losses, and was also not traveling as he was supposed to.

60. To Plaintiff's knowledge, there have been no other female LPMs hired since her

termination.

61. Since her termination, Plaintiff has been unable to find other employment despite her best efforts.

## FIRST CAUSE OF ACTION

**Discrimination in Violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII")**

62. Plaintiff incorporates and realleges Paragraphs 1 through 61 as though fully set forth herein.

63. Plaintiff is a member of a class of persons protected by Title VII, which prohibits discrimination based on sex and sexual orientation.

64. During all relevant times, Defendant and Randy Sheltra, Defendant's employee and Plaintiff's supervisor, were aware of Plaintiff's sex and sexual orientation.

65. As demonstrated in the facts discussed above, Plaintiff was performing according to Defendant's legitimate expectations.

66. Despite meeting and often exceeding Defendant's performance standards, Plaintiff was reprimanded and ultimately terminated for meritless performance-based reasons.

67. Plaintiff's counterparts, all of whom were male, were treated far more favorably than Plaintiff.

68. All of the male employees who were under the supervision of Randy Sheltra were subject to the same performance standards as Plaintiff. Many of the male employees had frequent and sub-standard performance but were given substantial leeway and remained employed with Defendant.

69. Defendant, as an employer, is subject to federal statutes prohibiting discrimination (Title VII) and has a legal obligation to provide Plaintiff with a workplace free of unlawful discrimination.

70. The conduct as set forth above constitutes violations of Title VII. Defendant, through Sheltra, subjected Plaintiff to unlawful harassment as prohibited by Title VII.

71. Defendant is liable to Plaintiff for the conduct of it and its employees under the theory of *respondeat superior.*

72. Defendant is therefore liable for Sheltra's discriminatory actions.

73. As a direct and proximate result of Defendant's conduct, Plaintiff suffered, and will continue to suffer, injuries and monetary damages in the form of past, present, and future lost earnings; past, present, and future pain and suffering; and other losses associated with such embarrassment, humiliation, and mental and emotional pain in an amount to be determined at trial.

74. Defendant's conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for the rights of Plaintiff, thereby warranting the imposition of punitive damages in an amount to be determined at trial.

75. As a result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

### Discrimination in Violation of NRS § 613.310 *et seq.*

76. Plaintiff incorporates and realleges Paragraphs 1 through 75 as though fully set forth herein.

77. Plaintiff is a member of a class of persons protected by NRS § 613.310 *et. seq.,* which prohibits discrimination based on sex and sexual orientation.

78. During all relevant times, Defendant and Randy Sheltra, Defendant's employee and Plaintiff's supervisor, were aware of Plaintiff's sex and sexual orientation.

79. As demonstrated in the facts discussed above, Plaintiff was performing according to

Defendant's legitimate expectations.

80. Despite meeting and often exceeding Defendant's performance standards, Plaintiff was reprimanded and ultimately terminated for meritless, and performance-based reasons.

81. Other employees in Plaintiff's same position were treated far more favorably than Plaintiff.

82. All of the male employees who were under the supervision of Randy Sheltra were subject to the same performance standards as Plaintiff. Many of the male employees had frequent and sub-standard performance but were given substantial leeway and remained employed with Defendant.

83. Defendant, as an employer doing business in Nevada, is subject to Nevada state statutes prohibiting discrimination (NRS § 613.310 *et. seq.*) and has a legal obligation to provide Plaintiff with a workplace free of unlawful discrimination.

84. The conduct as set forth above constitutes violations of NRS § 613.310 *et. seq.* Defendant, through Sheltra, subjected Plaintiff to unlawful harassment as prohibited by NRS § 613.310 *et. seq.*

85. Defendant is liable to Plaintiff for the conduct of it and its employees under the theory of *respondeat superior.*

86. Defendant is therefore liable for Sheltra's discriminatory actions.

87. As a direct and proximate result of Defendant's conduct, Plaintiff suffered, and will continue to suffer, injuries and monetary damages in the form of past, present, and future lost earnings; past, present, and future pain and suffering; and other losses associated with such embarrassment, humiliation, and mental and emotional pain in an amount to be determined at trial.

88. Defendant's conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for the rights of Plaintiff, thereby warranting the imposition of

punitive damages in an amount to be determined at trial.

89. As a result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged thereby and is entitled to reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for a judgment in favor of Plaintiff and against Defendant as follows:

1. For monetary damages for past, present, and future lost earnings; past, present, and future pain and suffering; and other losses associated with such embarrassment, humiliation, and mental and emotional pain;

2. For all costs and attorney's fees incurred in these proceedings;

3. For punitive damages in an amount to be determined by this Court; and

4. Any other such relief as this Court finds appropriate.

DATED this 18th day of June 2021.

RESPECTFULLY SUBMITTED,

**LAGOMARSINO LAW**

_____
ANDRE M. LAGOMARSINO, ESQ. (#6711)
CORY M. FORD, ESQ. (#15042)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
*Attorneys for Plaintiff Jessica Clarke*

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff demands a trial by jury on all issues in this action.

DATED this 18th day of June 2021.

                                                     RESPECTFULLY SUBMITTED,

                                                     **LAGOMARSINO LAW**

                                                     _/s/ Andre M. Lagomarsino_
                                                     ANDRE M. LAGOMARSINO, ESQ. (#6711)
                                                   CORY M. FORD, ESQ. (#15042)
                                                   3005 W. Horizon Ridge Pkwy., #241
                                                   Henderson, Nevada 89052
                                                   Telephone: (702) 383-2864
                                                   Facsimile: (702) 383-0065
                                                   *Attorneys for Plaintiff Jessica Clarke*

# EXHIBIT 1
# CLARKE PIP



# PERFORMANCE IMPROVEMENT PLAN

Date:   February 13, 2019

To:     Jessica Clarke, LPM District 3

From:   Randy Sheltra
        SVP Risk Management

RE:     Performance Improvement Plan

This will serve as your official notification that you are being placed on a Performance Improvement Plan ("PIP") and should you fail to meet the objectives outlined for you in this PIP, as well as fail to continue to maintain all recommended standard operating procedures, your employment will be terminated.

During the review period beginning February 14, 2019, your progress against stated objectives will be measured in 45-day interim periods.   I will be working with you to discuss your progress and or lack of development throughout the evaluation period reported.

## GOALS TO IMPROVE YOUR PERFORMANCE

1. Ensure you are proposing solutions to identified risks, made preferably in writing or through verbal means. Action plans must indicate the identified risk and follow through must occur to validate the corrective measures taken by the branch.

2. Foster an approach within your District to being part of the solution. While an LPM is not expected to be a "doer," he or she is required to identify risk and *assist* branch personnel in branch mitigation strategies.

3. Improve interview and interrogation skill-set by attending 3rd party classes and then apply with actual interviews at branch locations.

4. All required escalations occur to corporate risk management as needed according to set department requirements. Additionally, DVP is to be made aware of developments impacting the District.

5. Ensure proactive planning by creating an environment where you are "thinking out of the box" to address emerging risks, and or sharing incidents with all branches to learn from prior mistakes. Examples could include company specific or district actual events. The key is fostering a risk culture that everyone can learn from and creating a proactive vs. reactive environment.

6. Be involved in significant risk exposures, e.g. losses over $5k, serious MVA', employee injuries (loss time) and robberies. While you are not expected to be involved in all incidents, you are required to be personally involved in all losses with those you are working with branches to resolve. All others need your involvement, directly and indirectly.

7. Engage your Branch Managers as to **what** they need from a risk perspective. By doing so, you create a team approach and gain buy into risk initiatives.

Jessica, this is designed to make you a successful employee. The first follow-up meeting to review your performance is March 29, 2019

_____ Date : __2-19-19__

Jessica Clarke

_____ Date _____

Randy Sheltra

I have read, reviewed, understand and received a copy of the PIP plan dated February 13, 2019 outlining, but not limited to my expected job duties and responsibilities as a Loss Prevention Manager

I understand that if my performance improves, this PIP may be extended, in writing, along with additional action items.

I also understand that if I fail to perform satisfactorily within the PIP period including each of the monthly interim review periods as outlined in the PIP listed above, that I will be subject to further discipline up to and including the termination of my employment with Loomis.

_____     __2-19-19__

Jessica Clarke                                       Date

# EXHIBIT 2
# TEXT MESSAGES



